FILED
5:20-CV-8017-2020 May 11 PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO 243 (Rev. 01/15)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Northern District of Alabama (Northeastern) |
|---|---|---|
| Name *(under which you were convicted)*:<br>**James Oliver McDaniel** | | Docket or Case No.:<br>5:18-cr-00559-MHH-JHE-1 |
| Place of Confinement:<br>FCI McDowell, P.O. Box 1009, Welch, WV 24801 | | Prisoner No.:<br>41796-074 |
| UNITED STATES OF AMERICA<br><br>V. | | Movant *(include name under which convicted)*<br>JAMES OLIVER MCDANIEL |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   United States District Court
   Northern District of Alabama
   Northeastern Division

   (b) Criminal docket or case number (if you know):   5:18-cr-00559-MHH-JHE-1

2. (a) Date of the judgment of conviction (if you know):   5/16/2019

   (b) Date of sentencing:   5/15/2019

3. Length of sentence:   235 Months

4. Nature of crime (all counts):

   Ct 1: Conspiracy to Possess with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); Ct 2: Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Ct 3: Conspiracy to Commit a Financial Transaction Involving Proceeds of a Drug Trafficking Crime, in violation of 18 U.S.C. § 1956(h); Cts 4&7: Making False Statements or Concealment, in violation of 18 U.S.C. § 1001; Cts 5 & 8: Fraud and Related Activity in Connection with Identification Documents, . . . See Memorandum of Law in Support.

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐      (2) Guilty ☑      (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

   Guilty on Counts 1, 2 and 3 of the Indictment.

6. If you went to trial, what kind of trial did you have? (Check one)      Jury ☐      Judge only ☑

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?      Yes ☐      No ☑

8. Did you appeal from the judgment of conviction?      Yes ☐      No ☑

AO 243 (Rev. 01/15)

9.   If you did appeal, answer the following:

(a)  Name of court: _____

(b)  Docket or case number (if you know): _____

(c)  Result: _____

(d)  Date of result (if you know): _____

(e)  Citation to the case (if you know): _____

(f)  Grounds raised:

(g)  Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☐

If "Yes," answer the following:

(1)  Docket or case number (if you know): _____

(2)  Result: _____

(3)  Date of result (if you know): _____

(4)  Citation to the case (if you know): _____

(5)  Grounds raised:

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications,
concerning this judgment of conviction in any court?
Yes ☐     No ☐

11.  If your answer to Question 10 was "Yes," give the following information:

(a)  (1)  Name of court: _____

(2)  Docket or case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised: _____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:

(2) Docket of case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:        Yes ☐        No ☐

(2) Second petition:       Yes ☐        No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** Ineffective Assistance of Pretrial Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Pretrial Counsel's failure to:

(1) Communicate with McDaniel and properly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial;

(2) Conduct an adequate and independent pretrial investigation; and

(3) Attempt to negotiate a more favorable Plea Agreement deprived McDaniel of effective assistance of pretrial and plea context counsel under the Sixth Amendment to the Constitution of the United States.

Please See Memorandum of Law in Support.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

AO 243 (Rev. 01/15)                                                                                                    Page 6

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know):      _____

Date of the court's decision:      _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND TWO:**   Ineffective Assistance of Sentencing Counsel

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Sentencing Counsel's failure to:

(1) Correctly discuss and explain the PSR with McDaniel prior to the sentencing hearing;
(2) File substantive objections to the PSR; and
(3) File a notice of appeal deprived McDaniel of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

Please See Memorandum of Law in Support.

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐          No ☑

(2)  If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐          No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?
     Yes [  ]        No [  ]

(4)  Did you appeal from the denial of your motion, petition, or application?
     Yes [  ]        No [  ]

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
     Yes [  ]        No [  ]

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

**(b) Direct Appeal of Ground Three:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?
　　　Yes ☐　　　No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

**(c) Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
　　　Yes ☐　　　No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?
　　　Yes ☐　　　No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
　　　Yes ☐　　　No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
　　　Yes ☐　　　No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes [ ]          No [ ]

(2)  If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes [ ]          No [ ]

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

Case 5:20-cv-08017-MHH Document 1 Filed 05/11/20 Page 9 of 31

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐          No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐          No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?          Yes ☐          No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 243 (Rev. 01/15)                                                                                                    Page 11

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the
     you are challenging:

     (a) At the preliminary hearing:
     James Brice Callaway, 116 South Side Square, Huntsville, AL 35801

     (b) At the arraignment and plea:
     James Brice Callaway, 116 South Side Square, Huntsville, AL 35801

     (c) At the trial:
     N/A

     (d) At sentencing:
     James Brice Callaway, 116 South Side Square, Huntsville, AL 35801

     (e) On appeal:
     N/A

     (f) In any post-conviction proceeding:
     N/A

     (g) On appeal from any ruling against you in a post-conviction proceeding:

     N/A

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
     and at the same time?          Yes ☐          No ✔

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are
     challenging?          Yes ☐          No ✔

     (a) If so, give name and location of court that imposed the other sentence you will serve in the future:


     (b) Give the date the other sentence was imposed: _____

     (c) Give the length of the other sentence: _____

     (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
     sentence to be served in the future?          Yes ☐          No ✔

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
     why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

     N/A

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, McDaniel respectfully requests that the Court grant the following relief:

Vacate his conviction and sentence to start anew; alternatively, grant an Evidentiary hearing to further prove his grounds set forth above, resolve facts in dispute, expand an incomplete record or any other relief to which this Court deems that he may be entitled.

Respectfully submitted,

JAMES OLIVER MCDANIEL
REG. NO. 41796-074
FCI MCDOWELL
FEDERAL CORR. INSTITUTION
P.O.BOX 1009
WELCH, WV 24801
Appearing *Pro Se*

## DECLARATION OF JAMES OLIVER MCDANIEL

I, James Oliver McDaniel, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: May 4, 2020.

JAMES OLIVER MCDANIEL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES OLIVER MCDANIEL, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) Civil No. 5:20-cv-_____ |
| | ) Crim No. 5:18-cr-00559-MHH-JHE-1 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER
## 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

COMES Movant, JAMES OLIVER MCDANIEL ("McDaniel"), appearing *pro se,* and in

support of this memorandum would show as follows:

## I. STATEMENT OF JURISDICTION

Jurisdiction is vested in the District Court that presided over and imposed sentence pursuant

to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540,

562 (1994). In § 2255 Motions, federal prisoners "claiming the right to be released upon the ground

that the sentence was imposed in violation of the Constitution or laws of the United States" may

move the "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.

§ 2255(a).

## II. STATEMENT OF THE GROUND FOR REVIEW

A.    Whether pretrial counsel's failure to: (1) Communicate with McDaniel and properly

inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to

proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt

1

to negotiate a more favorable Plea Agreement deprived McDaniel of effective assistance of pretrial and plea context counsel under the Sixth Amendment to the Constitution of the United States.

B.     Whether sentencing counsel failure to: (1) Correctly discuss and explain the PSR with McDaniel prior to the sentencing hearing; (2) File substantive objections to the PSR; and (3) File a notice of appeal deprived McDaniel of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

## III. STATEMENT OF THE CASE

On November 29, 2018, a jury in the United States District Court for the Northern District of Alabama, Northeastern Division, returned a ten (10) count Indictment charging McDaniel and two other Defendants. See Doc. 1.[1] Count 1 charged McDaniel with Conspiracy to Possess with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). *Id.* Count 2 charged McDaniel with Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *Id.* Count 3 charged McDaniel with Conspiracy to Commit a Financial Transaction Involving Proceeds of a Drug Trafficking Crime, in violation of 18 U.S.C. § 1956(h). *Id.* Counts 4 and 7 charged McDaniel with Making False Statements or Concealment, in violation of 18 U.S.C. § 1001. *Id.* Counts 5 and 8 charged McDaniel with Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information, in violation of 18 U.S.C. § 1028(a)(4). *Id.* Counts 6 and 9 charged McDaniel with Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information to Facilitate a Drug Trafficking Crime, in violation of 18

---

1

"Doc." refers to the Docket Report in the United States District Court for the Northern District of Alabama, Northeastern Division in Criminal No. 5:18-cr-00559-MHH-JHE-1, which is followed by the Docket Entry Number.

U.S.C. § 1028(a)(7). *Id.* Count 10 charged McDaniel with Used a Communication Facility, to wit: United States Mail, in Committing, Causing and Facilitating the Offense Set Forth in Count 1 of this Indictment, in violation of 21 U.S.C. § 843(b). *Id.*

On January 23, 2019, a Change of Plea Hearing was held and McDaniel entered a plea of guilty as to Counts 1-3 of the Indictment without a written Plea Agreement. No Doc. Entry.

On May 15, 2019, McDaniel was sentenced to a total term of 235 months' imprisonment, 5 years of Supervised Release, no fine or restitution, and a Mandatory Special Assessment Fee of $300.00. See Doc. 45.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States,* 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States,* 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show

3

that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Holmes v. United States*, 876 F.2d 1545, 1552 (11ᵗʰ Cir. 1989). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708 (11ᵗʰ Cir. 2002). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

4

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993) (citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail

5

time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *Dell v. United States*, 710 F.3d 1267 (11th Cir. 2013).

6

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

## V. DISCUSSION

As a preliminary matter, McDaniel respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. *Caldwell v. Warden,* 748 F.3d 1090 (11ᵗʰ Cir. 2014); *Estelle v. Gamble,* 429 U.S. 97 (1976)(same); and *Haines v. Kerner,* 404 U.S. 519 (1972)(same).

**A. Pretrial Counsel's Failure To: (1) Communicate with McDaniel and Properly Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A More Favorable Plea Agreement Deprived McDaniel of Effective Assistance of Pretrial and Plea Context Counsel Under the Sixth Amendment to the Constitution of the United States.**

    1-2.    Failure to Communicate with Mcdaniel and Conduct An Adequate and Independent Pretrial Investigation.

Chapter 1, Rule 1.4: Communication of the Alabama Rules of Professional Conduct states that:

(a)    A lawyer shall:

    (1)    promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

    (2)    reasonably consult with the client about the means by which the client's objectives are to be accomplished;

    (3)    keep the client reasonably informed about the status of the matter;

    (4)    promptly comply with reasonable requests for information; and

7

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, James Brice Callaway ("Callaway"), was McDaniel's appointed attorney from pretrial to sentencing. There was not any reasonable communication from the beginning of his case between McDaniel and his attorney, Callaway, so that he could effectively participate in his defense. Counsel certainly did not meet the standard as set forth above in Rule 1.4 of the Alabama Rules of Professional Conduct or any other professional norm for that matter. Callaway failed to reasonably consult with McDaniel about the means to be used to accomplish his objectives other than to push him into pleading guilty.

In this case, Callaway visited McDaniel about 5 times for about 5 to 30 minutes each visit. The first time Callaway met McDaniel, he brought with him McDaniel's Indictment and said right off the bat that he is looking at "life sentence" and the only way not to get a life sentence would be to plead guilty and cooperate with the government. During the second and third visit, Callaway brought a bunch of books but were never opened, they were merely props. Also, Callaway failed to provide McDaniel discovery, photographs, or any documents that could help his case. Callaway mentioned that he would coordinate with the government and have a meeting. The next time McDaniel heard from Callaway, he was with two people from the government— they sat down and

8

advised McDaniel to just "fill in the blanks" (form), without any discussion of how much time off would MCDaniel receive.

Here, Callaway stated that if McDaniel would not take the plea and go to trial, he will receive a life sentence. Because McDaniel was scared to spend the rest of his life in prison, he believed and followed his attorney's advice. Adequacy of communication depends in part on the kind of advice or assistance that is involved.

Callaway did not draft nor discuss any strategy for defense, instead he straight out advised McDaniel to take the plea offer. Callaway never discussed anything about proceeding to trial because Callaway did not think that McDaniel had any kind of affirmative defense to use at trial. Callaway assured McDaniel that pleading guilty was the best for him. McDaniel was prejudiced when Callaway pushed him to plead guilty and receive a 235-month sentence.

Here, Callaway was stuck with only one strategy – plead guilty and he would receive a reduction of sentence should he cooperate with the government. He failed to properly communicate with McDaniel. His absence of asking McDaniel details in an attempt to build a defense resulted to neglect of duty and unfavorable outcome. Callaway's role was more like an aid to the prosecutor and not a defense counsel.

This advice was the main reason that persuaded McDaniel to plead guilty. Not to mention that Callaway has not prepared anything in McDaniel's defense. McDaniel wholly relied on Callaway's advice, McDaniel acquiesced to same. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Callaway failed to do so.

9

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal,* 239 F.3d at 688; *Magill v. Dugger*, 824 F.2d 879, 886 (11th Cir. 1987). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Callaway failed to conduct any kind of a reasonable independent pretrial investigation of McDaniel's case. Callaway failed to research the case law, interview witnesses or investigate the facts of McDaniel's case. There was no independent pretrial investigation. Callaway failed to move the Court for a private investigator to independently investigate McDaniel's case. There was not any kind of independent pretrial investigation conducted whatsoever to McDaniel's knowledge. Callaway did no investigation at all.

It is well settled in this circuit that a criminal investigation requires investigators to piece together evidence, often circumstantial and from multiple sources, to prove a defendant's innocence or guilt. See *Elmore v. Ozmint,* 661 F.3d at 804 (4th Cir. 2011) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"(quoting *Strickland,* 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where

10

a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

It is important to note that, absent McDaniel's case details, Callaway advised him to plead guilty and cooperate with the government, which seemed like he adjudged McDaniel guilty during their first meeting. Callaway made McDaniel plead guilty to the Indictment charging him of 500 grams or more of methamphetamine, when in reality, the drug weight was on 400+ grams. Callaway failed to question the validity of the Indictment, instead, he pushed McDaniel to plead guilty, and was later held accountable for two 500 grams of methamphetamine.

Further, McDaniel's text message to his son was for "pot" and not "meth," yet, it was used to calculate his offense level, presuming it was methamphetamine– another issue that should have been raised or investigated but Callaway failed. He failed to interview McDaniel's sons, who are key witnesses to this case. He could have asked them if McDaniel had given them meth or had witnessed their father deal meth, or seen meth in the house.

More so, he Callaway failed to request for an independent investigator to verify the total amount of drugs attributable to McDaniel and have the drugs tested for purity. Because of lack of compliance and initiative to provide defense to McDaniel, Callaway was unable to obtain the essential particulars needed to be fully informed so that he could properly recommend an informed decision on whether to plead guilty or proceed to trial to McDaniel.

In this case, it is apparent from the advice and information given to McDaniel that Callaway expressly failed to correctly familiarize with the relevant facts of the case, case law, applicable Guidelines and potential consequences of a conviction in his case. Also, Callaway failed to properly inform McDaniel of any other matter related to his case, which led to him 235-month sentence. Had

11

he done so, McDaniel would have been properly advised of his actual correct options available. As such, there is a reasonable probability that he would have proceeded to trial had he been properly informed by counsel of the sentencing exposure he faced, as opposed to the Life sentence that Callaway quoted McDaniel merely because he did not want to take his [McDaniel's] case to trial.

Counsel's lack of knowledge of sentencing guidelines led to his failure to adequately advise defendant to an involuntary plea. Accordingly, Callaway failed to research and properly prepare this case so that he could inform McDaniel of the relevant circumstances and likely consequences of his case so that he could make an informed decision of whether to plead guilty or to proceed to trial.

Correspondingly, McDaniel's conviction and sentence should be vacated so that he can plea anew. To obtain relief on an ineffective assistance of counsel claim, McDaniel must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

### 3. Failure to Attempt to Negotiate A More Favorable Plea Agreement

"[C]riminal justice today is for the most part a system of pleas, not a system of trials . . . [T]he right to adequate assistance of counsel cannot be defined or enforced without taking into account the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [ ] that plea bargains have

12

become so central to the administration of the criminal justice system . . . ," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotation marks omitted); see also, *Frye*, 132 S. Ct. at 1407.

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*, 130 S. Ct. at 1486. When a defendant persists in a plea of not guilty, a failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *Id.*

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given deficient advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to it, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12.

"It is the lawyer's duty to ascertain if the plea is available, that it could possibly lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.* Also,

13

whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

In exchange for McDaniel pleading guilty and cooperating with the government, Callaway coerced McDaniel into accepting guilty to allegedly avoid a life sentence. McDaniel did not even have any idea how much reduction will he be receiving for the acceptance of responsibility and substantial assistance to the government. He risked his life to cooperate and provide substantial assistance to the government, but was not rewarded substantially by receiving a less harsh sentence. In essence, McDaniel's guilty plea was skewed in favor of the government and did not have any benefit for McDaniel. It was a fast way for his attorney to dispose of the case and move on.

**Fact:** McDaniel now suffers anxiety and he is not in a good place. He regrets that he talked to the government because he is not looking over his shoulder, with no peace.

**Note:** Had McDaniel went to trial, he will no receive an automatic life sentence, as opposed to Callaway's pretense.

In this case, Callaway failed to review the advantages and disadvantages of the plea offer. From the get go, Callaway advised McDaniel to plead guilty, absent any review and investigation of the case. As such, McDaniel had a true and honest belief from this misadvice given to him by his attorney, that if he pled guilty to the government's Plea Agreement that it was the best opportunity for him in his case. Because McDaniel was a layman of the law, he wholly relied on counsel's advise.

In the plea bargaining stage of criminal proceedings, the second part of the *Strickland* analysis, i.e., the "prejudice" prong, "focuses on whether counsel's constitutionally ineffective

14

performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); accord *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1409-10 (2012). Once the defendant has satisfied the first prong of *Strickland* by establishing that counsel's performance was constitutionally defective, the threshold showing of prejudice required to satisfy the second prong is comparatively low—in such cases, the prejudice prong is satisfied if there is a "reasonable probability" that the defendant would have accepted the Government's plea offer, but-for counsel's ineffective assistance or inadequate advice. *Lafler*, 132 S. Ct. at 1385; see also, *Merzbacher v. Shearin*, 706 F.3d 356 (4th Cir. 2013) (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012)), for the proposition that it is easier to show prejudice in the guilty plea context than in other contexts because the claimant need only show a reasonable probability that he would have pleaded differently). Accordingly, if reasonable minds could conclude that a fully informed defendant would have accepted the Government's plea offer, then the defendant is entitled to relief. Moreover, if counsel failed to provide the defendant with an estimated range of the penalties that could result from a trial conviction, the prejudice prong is presumptively satisfied if the difference between the length of the sentence proposed in the Government's plea offer and the sentence imposed after a trial conviction was substantial. See *Morris*, 470 F.3d at 602; *Griffin*, 330 F.3d at 737. When this presumption applies, the defendant is not required to submit additional objective evidence to "support his own assertion that he would have accepted the offer" if provided with the benefit of effective assistance. *Griffin*, 330 F.3d at 737.

15

**B.    Sentencing Counsel Failure To: (1) Correctly Discuss and Explain the PSR with McDaniel Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; and (3) File A Notice of Appeal Deprived McDaniel of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

1-2.    Failure to Correctly Discuss, and Explain the PSR with McDaniel and File Substantive Objections to the PSR

After McDaniel pled guilty and the PSR was released, Callaway went to see McDaniel. Callaway handed McDaniel the PSR and told him that he has 5 minutes to read the report. The PSR recommends a 30-year sentence, it was the first time that McDaniel had an idea about the length of his sentence– something that was kept unknown to him even after all the help he has given to the government. Callaway failed to correctly discuss and explain the PSR to McDaniel. He did not explain it to him so that he could understand the sentencing calculations and the relevant conduct of the offense. Further, Callaway failed to file any substantive objections to the PSR.

As discussed above, because no any kind of investigation was conducted in this case, Callaway failed to object to PSR's drug weight calculation. McDaniel was held liable for two 500 grams of methamphetamine when it should have been 400+ grams instead.

On May 15, 2019, before the sentencing hearing, McDaniel received a plea offer for the first time– for 235 months. McDaniel was petrified but thought that 235 months is better than 30 years. Without a clear calculation of offense level and consideration for acceptance of responsibility and cooperation, McDaniel was compelled to accept the 235-month plea offer, as advised by his dispassionate attorney.

16

### 3.     Failure to File a Notice of Appeal

After sentencing, Callaway never advised McDaniel that he could file for a direct appeal. Basically because he believed that McDaniel was properly sentenced and deserving of the 235-months sentence, therefore, no Notice of Appeal was filed in this case.

A lawyer performs deficiently if he "disregards specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer also performs deficiently if he fails to discuss the advantages and disadvantages of an appeal and fails to ascertain the defendant's wishes about an appeal whenever "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 478-80.

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, the Court must also consider whether counsel "fully inform[ed] the defendant as to his appellate rights." To meet his constitutional duty, Callaway had to do more than simply give McDaniel notice "that an appeal is available or advise that an appeal may be unavailing." *Id.* Instead, he must have advised McDaniel "not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *Id.* Failure to provide such advice constitutes constitutionally deficient performance. *Id.*

When considering prejudice in a case involving counsel's failure to file a Notice of Appeal, the Court does not require the defendant to show that his appeal would have had merit. *Vinyard,* 804 F.3d at 1228 (citing *Flores-Ortega,* 528 U.S. at 486)). The reason that Defendant need not make this showing follows the reasoning in *Strickland* that when counsel's acts render a court proceeding

unreliable or nonexistent, the Court presumes prejudice with no further showing from the defendant of the merits of his claims. *Flores-Ortega*, 528 U.S. at 484. Thus, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* As such, "the defendant must only demonstrate that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Id.* The Court's focus therefore should be on whether McDaniel can demonstrate that, but for Callaway's deficient performance, i.e., his failure to file a Notice of Appeal, he would have appealed the District Court's Judgment in a Criminal Case [Doc. 219] in a timely manner. *Flores-Ortega*, 528 U.S. at 484.

As the record fails to conclusively establish that McDaniel did not instruct Callaway to file a notice of appeal, this Court may grant McDaniel relief in the form of an out of time appeal in the first instance. In the alternative, the Court should hold an evidentiary hearing to expand an incomplete record and resolve this matter.

## VI. CONCLUSION

For the above and foregoing reasons, McDaniel's sentence should be vacated for resentencing. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that McDaniel may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

18

Respectfully submitted,

Dated: May 4, 2020.

JAMES OLIVER MCDANIEL
REG. NO. 41796-074
FCI MCDOWELL
FEDERAL CORR. INSTITUTION
P.O.BOX 1009
WELCH, WV 24801
Appearing *Pro Se*

19